UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEIDRE McKIERNAN HETZLER,

                    Plaintiff,

          -vs-                              **No. 07-CV-6399(MAT)**
                                            **DECISION AND ORDER**

RECORD/INFORMATION DISSEMINATION
SECTION, FEDERAL BUREAU OF
INVESTIGATION AND DIRECTOR, OFFICE
OF INFORMATION AND PRIVACY, U.S.
DEPARTMENT OF JUSTICE,

                    Defendants,


## I.    Introduction

     This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and pertains to a request made by pro se plaintiff Déirdre McKiernan Hetzler ("Hetzler" or "Plaintiff") for records maintained by the Federal Bureau of Investigation ("FBI"). After searching its records, the FBI determined that 187 pages were responsive to Plaintiff's request. It released 99 pages in full, released 67 pages in part, and withheld 21 pages in full. Defendants claim that the redacted information falls within one or more categories exempting it from disclosure under FOIA.

     Defendants have moved for summary judgment under Federal Rule of Civil Procedure ("F.R.C.P.") 56 asserting that they have established that the redacted material properly is withheld under FOIA exemptions protecting classified information affecting national security interests of the United States; confidential

-1-

source information; information concerning internal agency rules and procedures; and information that potentially affects the privacy of third parties. Defendants have asserted multiple justifications for non-disclosure of some of the same items.

Plaintiff opposed Defendants' motion and cross-moved for summary judgment. In her Motion for Summary Judgment, Plaintiff generally argues that Defendants applied the national security and privacy exemptions in an over broad manner, and specifically argues that six of the 187 pages of documents reviewed by the FBI as responsive to her FOIA request were improperly redacted: documents Bates-stamped McKiernan 42, 46, 50, 64, 65, and 97.[1] Defendants opposed Plaintiff's motion and submitted a reply to Plaintiff's opposition to their summary judgment motion.

Finding that Defendants' Vaughn[2] index was insufficient to determine whether Defendants had complied with the strictures of FOIA and were entitled to summary judgment, the Court directed Defendants to submit, for an in camera review, unredacted copies of the 67 pages that were partially redacted, along with unredacted

---

[1]

The responsive documents, are compiled and reproduced in the form that they were disclosed to Plaintiff as Exhibit N to the Declaration of David M. Hardy, Esq.

[2]

Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973) ("In a large document it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt. This could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document.").

copies of the 21 pages that were fully withheld. The Court denied without prejudice the parties' competing summary judgment motions until it had an opportunity to view the redacted documents.

On August 23, 2012, Defendants, through their attorney, submitted unredacted copies of 80 of the 88 pages requested by the Court. The remaining 8 pages were deemed "Secret" by the FBI, meaning that an individual with the appropriate security clearance was required to transport the documents and remain with them during the _in camera_ review. Accordingly, on August 24, 2012, Special Agent Joseph Testani brought the remaining eight documents for the Court to review and then returned them to the local FBI field office.

The matter is now fully submitted and ready for decision. For the reasons that follow, Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Cross-Motion for Summary Judgment is granted in part and denied in part.

## III. Discussion

### A.   General Legal Principles Applicable to FOIA

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency

improperly withholds. <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>DOJ v. Reporters</u> <u>Comm. for Freedom of the Press</u>, 489 U.S. 749, 755 (1989) ("<u>Reporters Comm.</u>"). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" <u>Reporters Comm.</u>, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." <u>Nat'l Ass'n of Home Builders v. Norton</u>, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting <u>U.S. Dep't of State v. Ray</u>, 502 U.S. 164, 173 (1991)).

## B.   Adequacy of the FBI's Search

To obtain summary judgment, Defendants must demonstrate "beyond material doubt" that they have "conducted a search reasonably calculated to uncover all relevant documents." <u>Morley v.</u> <u>CIA</u>, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting <u>Weisberg v. DOJ</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation mark omitted) (alteration in original)). "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by FOIA." <u>Meeropol v. Meese</u>, 790 F.2d 942, 952 (D.C. Cir. 1986) (quotation omitted).

-4-

David M. Hardy, Esq., Section Chief of the Record/Information Dissemination Section ("RIDS"), of the Federal Bureau of Investigation ("FBI"), submitted a declaration in support of Defendants' motion for summary judgment explains in detail the multiple searches conducted in order to locate documents responsive to Plaintiff's request. See Declaration of David M. Hardy, Esq. ("Hardy Decl.") at 3-11. In her motion for summary judgment, Plaintiff has not challenged the adequacy of Defendants' search. Moreover, there is no suggestion that Defendants acted in bad faith in conducting the search. See Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations omitted). Therefore, the Court will grant Defendants' motion for summary judgment on the adequacy-of-search issue. See Judicial Watch, Inc. v. U.S. Dep't of Defense, Civil Action No. 11-890 (JEB), ___ F. Supp.2d ___, 2012 WL 1438688, at *7 (D. D.C. Apr. 26, 2012).

## C.   The Propriety of the FBI's Withholdings

Congress exempted nine categories of documents from FOIA's expansive scope. "[T]he statutory exemptions, which are exclusive, are to be 'narrowly construed[.]'" Norton, 309 F.3d at 32 (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)). The government has the burden of showing that any withheld documents fall within an exemption to FOIA. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B); EPA v. Mink, 410 U.S. 73, 79 (1973)). "'[C]onclusory and

generalized allegations of exemptions' are unacceptable[.]" Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 830 (D.C. Cir. 1979) (quoting Vaughn, 484 F.2d at 826).

The FBI here relies on Exemptions 1, 2, 6, and 7. See generally Morley, 508 F.3d at 1123, et seq. (discussing exemptions). Exemption 1 applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 2 protects from disclosure records that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Under Exemption 6, a federal agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7 protects records compiled for law enforcement purposes but only to the extent that disclosure of such records would cause one of six statutorily-enumerated harms. 5 U.S.C. § 552(b)(7); see also FBI v. Abramson, 456 U.S. 615, 622 (1982).

Defendants have further segregated the redacted material according to various categories within each exemption. See Hardy Decl. at 12-14, ¶¶ 32-33. The documents that contain redactions

contain, on their face, coded categories detailing the nature of the information withheld. See id. Attached as Appendix 1 to this Decision and Order is a table summarizing the exemption categories and the pages on which the exemption categories) are applied. This table is based on the "Summary of Justification Categories" contained in the Hardy Declaration.

### 1.  Exemption 1: Information Pertinent to National Security

An agency may invoke Exemption 1, see 5 U.S.C. § 552(b)(1), "only if it complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification." King v. DOJ, 830 F.2d 210, 214 (D.C. Cir. 1987). The Executive Order ("EO") applicable in this case is EO 13526, which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information." Exec. Order No. 13526, 75 Fed. Reg. 707, 707, 2009 WL 6066989 (Pres. Exec. Order Dec. 29, 2009). In order for information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption 1, it must meet the requirements set forth in E.O. 13526, § 1.1(a):

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in § 1.4 of this order; and

-7-

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

E.O. 13526, § 1.1(a)(1)-(4), 2009 WL 6066989. Section 6.1(cc) of E.O. l3526 defines "[n]ational [s]ecurity" as "the national defense or foreign relations of the United States." E.O. 13526, § 6.1(cc), 2009 WL 6066989.

In addition to these substantive requirements, E.O. 13526 contains certain procedural and administrative requirements that must be observed before information can be considered to be properly classified. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

Hardy, who is an "original classification authority," avers that he followed the requisite procedures and "determined that this classified information continues to warrant classification at the 'Secret' or 'Confidential' level, and is exempt from disclosure pursuant to E.O. 13526, §3.3, categories (b)(l) and (b)(6)." Hardy Decl. at 17, ¶ 38. Executive Order 13526, §3.3(b)(l) exempts from automatic declassification certain intelligence activities, including special activities, that may reveal information about the application of intelligence sources and methods. The FBI here withheld information pursuant to E.O. 13526, §3.3 (b)(l) where it

found that the information (1)  contained file numbers assigned to a specific intelligence activity or method; (2) contained standard FBI terminology or phraseology appearing in the most recent FBI investigations; (3) described the character of the case by identifying the specific type of intelligence activity directed at a specific target and the identity of the target of national security interest; (4) identified targets of foreign counterintelligence investigation; and (5) protected an intelligence source. Hardy Decl. at 18, ¶ 42. Hardy contends that "[t]he unauthorized disclosure of the information could reasonably be expected to cause serious damage to the national security." Hardy Decl. at 17, ¶ 38. Hardy avers that no additional reasonably segregable portions could be declassified and released. Hardy Decl. at 16-17, ¶¶ 37-37 & n.10; see also id., Ex. N. After personally reviewing the responsive documents, Hardy

Plaintiff argues that Defendants have mistakenly asserted the national security exemption as to information concerning, inter alia, the method of investigation and character of the case. noting that "for purposes of historical accuracy" in the biography of Dr. McKiernan she is writing, "it is essential to know of what crime Dr. McKiernan was suspected, if any, and, in particular, whether the [Federal] Bureau [of Investigation] suspected him of IRA membership and if it has any proof." Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl. Resp.") at 2, ¶ 2.

Plaintiff contends that because the investigation into Dr. McKierance is decades-old, the information gleaned "cannot be that current or useful, nor can any related security threat any longer exist." Pl. Resp. at 4, ¶¶ 3-4.

Plaintiff also asserts that for the purpose of historical accuracy, "it is essential to know whether the foreign country (or an agency thereof) requesting information/surveillance was England/Great Britain (or another country), since they later sought [Dr. McKiernan's] assistance regarding a Northern Ireland peace." Pl. Resp. at 3, ¶ 2. Plaintiff states that she does "not need the exact source of the foreign intelligence (e.g.[,] England's MI5), but the *fact and identit* [sic] *of the country* are critical to" the biography. Id. (emphasis in original).

### 2.  Documents Fully Withheld Under Exemption 1

Exemption 1 has been asserted to withhold fully McKiernan 96-97 and 159-162. With regard to McKiernan 96-97, Defendants have asserted Exemption (b)(1)-1 to protect the following: an intelligence method used for gathering data, the character of the case, and intelligence source information. See Hardy Decl. at 18 n.11; id. at 22 n.14; id. at 23 n.16. On McKiernan 96, Exemption (b)(1)-1 also has been asserted to protect standard FBI terminology and phraseology.

### a.   McKiernan 96-97

McKiernan 96-97 is a two-page FBI field memorandum concerning that agency's investigation of Dr. McKiernan's activities and associations. All of the information therein was declassified decades ago apart from several lines, highlighted in red, which remain classified. That a document has been declassified or unclassified does not necessarily preempt the government agency from asserting the national security exemption. See ACLU v. U.S. Dep't of Justice, 321 F. Supp.2d 24, 35 (D. D.C. 2004) ("[T]he issue now before the Court is whether the Attorney General's September 2003 decision to declassify the number of section 215 applications granted by the FISA court means that the information that plaintiffs seek can no longer be withheld under Exemption 1. While the resolution of this issue is hardly free from doubt, the Court will uphold the government's claim of exemption because it is mindful of the 'long-recognized deference to the executive on national security issues,' and the need to accord 'substantial weight' to an agency's affidavit attesting to the classified status of documents implicating security issues.") (quoting Ctr. for Nat'l Security Studies v. DOJ, 331 F.3d 918, 927-28 (D.C. Cir. 2003) (further quotation omitted)).

After reviewing the documents in camera, the Court surmises that the information in which Plaintiff is interested on McKiernan 96-97 are the observations made by the FBI regarding Dr. McKiernan.

It would appear that this information falls within the "character of the case" category and/or the "intelligence method" category. (Defendants have not specifically identified which portions of the documents are protected by which aspect of exemption category (b)(1)).

Hardy asserts in general terms that "disclosure of this specific information could reasonably be expected to cause serious damage to the national security as it would (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence information." Hardy Decl. at 22, ¶ 46. The Court is not persuaded that Defendants have carried their burden of showing that disclosure of this information could cause serious damage to national security in light of (1) the age of McKiernan 96-97; (2) the fact that the investigation has been closed for some time and the subject of the investigation (Dr. McKiernan) is deceased; and (3) the fact that the PIRA,[3] with which Dr. McKiernan

---

[3]
The Irish Republican Army ("IRA"), formed in 1969 as the clandestine armed wing of the political movement Sinn Fein, is also known as the Provisional Irish Republican Army ("PIRA") or "the Provos". This appellation is intended to distinguish it from two, more radical, splinter groups–the Continuity IRA ("CIRA"), formed in 1995; and the Real IRA ("RIRA"), formed in 1997. See Chapter 6 ("Terrorist Organizations"), in Country Reports on Terrorism, Office of the Coordinator for Counter terrorism, available at http://www.state.gov/j/ct/rls/crt/2006/82738.htm (last accessed Aug. 29, 2012). The IRA, or PIRA, conducted attacks until the 1997 cease-fire. Id. It agreed to disarm as part of the 1998 Belfast Agreement, which established the basis for peace in Northern Ireland.

was believed to sympathize, is not on the Department of State's
Foreign Terrorist Organization ("FTO") list as a group that
currently poses a threat to the United States or its interests.
Therefore, the Court denies summary judgment as to Defendants'
invocation of exemption category (b)(1) as to the declassified
information on McKiernan 96-97 that relates to the FBI's findings
and observations regarding Dr. McKiernan. The Court grants summary
judgment to Defendants with regard to (1) the information on
McKiernan 96-97 that remains classified; (2) any standard
terminology or phraseology that appears on McKiernan 96; and
(3) any intelligence source information that appears on McKiernan
96-97. Defendants are directed to re-process McKiernan 96-97
accordingly and re-release those pages to Plaintiff.

### b.   McKiernan 159-160

McKiernan 159-160 comprise a two-page list of confidential
sources, including their names and code numbers. As Plaintiff has
waived any request for the identities or code numbers of
confidential sources, the Court grants summary judgment to
Defendants with regard to their withholding of McKiernan 159-160
under exemption category (b)(1).

---

Dissension within the IRA/PIRA over support for the peace process
resulted in the formation of the CIRA and the RIRA. Id.

### c.   McKiernan 161-162

McKiernan 161 is a 1977 letter from a foreign government representative to a Legal Attache in the American Embassy enclosing a list of individuals (McKiernan 162) who are described as known PIRA sympathizers. Dr. McKiernan is identified on McKiernan 162. McKiernan 161-162 were declassified in 1988. On McKieran 161-162, the FBI has asserted exemption category (b)(1) to protect information regarding an intelligence method used for gathering data, the character of the case, the targets of foreign counterintelligence, intelligence source information, and information pertaining to foreign relations or foreign activities.

With regard to information concerning the foreign intelligence source, and information pertaining to foreign relations or foreign activities, the Court concludes that Defendants have met their burden of establishing that withholding is warranted under exemption category (b)(1)-1 as disclosure could discourage potential intelligence sources from cooperating with the FBI for fear that their identities would be publicly revealed. With regard to the information concerning foreign relations or foreign activities (i.e., the identity of the addressee, the sender, and the government of which the sender was a representative), Defendants have met their burden under exemption category (b)(1)-1 because it is reasonable to conclude that release of this information could demonstrably impair relations between the

United States and a foreign government by compromising cooperative foreign sources and curtailing the flow of information from these sources. It is not a question of whether the Court agrees with Defendants' assessment of the risk, but rather, "whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the [Agency] is expert and given by Congress a special role." Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982). As to these redactions on McKiernan 161-162, Hardy's declaration satisfies this standard.

Plaintiff asserts that she needs to know whether the foreign government who provided information regarding her father was Great Britain because, she states, Great Britain later sought his help in connection with the peace accord. Plaintiff does not provide any further explanation as to why the identity of the country whose representative compiled and sent McKiernan 161-162 is "critical" to the biography Plaintiff is writing. This conclusory statement does not provide a basis for the Court to reject Defendants' arguments, which need only be "plausible" and "logical", ACLU v. DOD, 628 F.3d 612, 624 (D.C. Cir. 2011) (citing Wolf v. CIA, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

With regard to the alleged intelligence methods on McKiernan 161-162, the Court concludes, for the reasons discussed in connection with McKiernan 96-97, that redaction is not justified

under exemption category (b)(1)-1. That is, Defendants have not carried their burden of showing that disclosure of this information reasonably could be expected to cause serious damage to the national security. Summary judgment is therefore denied as to Defendants' use of exemption category (b)(1)-1 to justify the withholding of the text in the body of letter (McKiernan 161) and Dr. McKiernan's name on McKiernan 162.

Summary judgment is granted with regard to Defendants' invocation of Exemption (b)(1) to justify the withholding of the names of the individuals besides Dr. McKiernan listed on McKiernan 162 on the basis that they are or were targets of foreign counterintelligence.

### d.   McKiernan 178-179

McKiernan 178-179 contain information concerning the identities and other personal information of various FBI informants in New York, along with the names of their contacting agents. Defendants have asserted exemption category (b)(1)-1 to withhold some of the informants' names on McKiernan 178-179, while other names and identifying information have been protected under Exemptions 2, 6, or 7, or a combination thereof. Because Plaintiff has waived any request for identifying information concerning confidential informants, summary judgment is granted as to

Defendants' use of exemption category (b)(1) on McKiernan 178-179.[4]

### 2. Exemption 2: Information Related Solely to the Internal Rules and Practices of an Agency

Exemption 2 exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." 8 U.S.C. § 552(b)(2). In the context of the documents here at issue, the FBI has asserted Exemption 2 in two categories: The first is exemption category (b)(2)-1, which has been asserted to "protect informant file numbers of permanent confidential symbol number sources of the FBI." Hardy Decl. at 27, ¶ 56. These confidential source file numbers are assigned in sequential order to confidential informants who report information to the FBI on a regular basis, pursuant to an express assurance of confidentiality. Id. The second is exemption category (b)(2)-2, which has been asserted to protect the permanent source symbol numbers of FBI sources. Id. at 28, ¶ 59. Again, these FBI sources provided information under an express assurance of confidentiality.

Plaintiff has "stipulate[d] that she is not interested in file numbers or source symbols, e.g. (b)(2)-1, (b)(2)-2, (b)(7)(D)-2, (b)(7)(D)-3. . . ." Pl. Resp. at 5, ¶ 4. Therefore, summary judgment is granted as to Defendants' redaction of confidential source file numbers pursuant to exemption category (b)(2)-1 on

---

[4] As discussed further below, the Court likewise grants summary judgment to Defendants with regard to its reliance Exemptions 2, 6, and 7 in connection with McKiernan 178-179.

McKiernan 179. Summary judgment likewise is granted as to Defendants' redaction of permanent source symbol numbers of FBI sources pursuant to exemption category (b)(2)-2 on McKiernan 53-56, 59, 66, 67-67, 70, 74-77, 82, 97, 164, and 178-179.

### 3.   Exemptions 6 and 7(C): Privacy Interests

FOIA Exemptions 6 and 7(C) protect against disclosures that implicate personal privacy interests. United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755-56 (1989) ("Reporters Comm."). Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) allows non-disclosure of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thus, although similar, Exemptions 6 and 7(C) are not coextensive. Beck v. Department of Justice, 997 F.2d 1489, 1492 (D.C. Cir. 1993). The Supreme Court has explained that

> [e]xemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects. First, whereas Exemption 6 requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption 7(C). . . . Second, whereas Exemption 6 refers to disclosures that "would constitute" an invasion of privacy, Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion.

Reporters Comm., 489 U.S. at 756 (footnotes omitted). See also Schoenman v. Federal Bureau of Investigation, 576 F. Supp.2d 3, (D. D.C. 2008) ("Exemption 6's stronger language 'tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure,' and creates a 'heavy burden' for an agency invoking Exemption 6.") (quoting Morley v. Central Intelligence Agency, 508 F.3d 1108, 1128 (D.C. Cir. 2007)).

There are six categories under both Exemptions 6 and 7(C) claimed by Defendants to protect names and/or identifying information of various categories of individuals. The exemption categories are as follows: (b)(6)-1 and (b)(7)(C)-1 (FBI special agents and FBI support personnel); (b)(6)-2 and (b)(7)(C)-2 (third parties of investigative interest); (b)(6)-3 and (b)(7)(C)-3 (third parties who provided information to the FBI); (b)(6)-4 and (b)(7)(C)-4 (third parties merely mentioned in FBI documents); (b)(6)-5 and (b)(7)(C)-5 (state or local law enforcement personnel); and (b)(6)-6 and (b)(7)(C)-6 (federal government personnel not affiliated with the FBI). See, e.g., Hardy Decl. at 13-14.

### a.  McKiernan 42

Plaintiff has raised arguments in opposition to Defendants' invocation of (b)(6)-3, (b)(6)-4, (b)(7)(C)-3, and (b)(7)(C)-4 on McKiernan 42. Plaintiff states that she seeks "clarity of

allegations about the source of mail (ibid. pp. 42, 50)[5][.]" Pl.
Resp. at 1 (Preliminary Remarks). The Court is unclear as to the
nature of Plaintiff's request. The Court has reviewed an unredacted
copy of McKiernan 42, and there are no "sources of mail" listed
thereon. That document summarizes FBI interviews with several mail
carriers, but it does not identify the names of any individuals who
sent mail to Dr. McKiernan. Therefore, it does not appear that
there is information responsive to Plaintiff's request on McKiernan
42, and the Court finds that she has not made a sufficient showing
to overcome the named individuals' privacy interests. Summary
judgment is granted as to Exemptions (b)(6)-3, (b)(6)-4, (b)(7)(C)-
3, and (b)(7)(C)-4 on McKiernan 42.

### b.   McKiernan 46

Plaintiff has raised arguments in opposition to Defendants'
invocation of (b)(6)-1, (b)(6)-3, (b)(6)-4, (b)(7)(C)-1, (b)(7)(C)-
3, and (b)(7)(C)-4 on McKiernan 46. Plaintiff states that she seeks
"the contents of the mail covers placed, especially the foreign
letter (cf. McKiernan pp 46, 50)[6][.]" Pl. Resp. at 1 (Preliminary
Remarks). The first three names redacted on McKiernan 46 pertain to

---

[5]
With regard to McKiernan 50, Defendants have invoked exemption
categories (b)(7)(D)-1 and -4, as discussed further below. Exemption
categories (b)(6)-3, (b)(6)-4, (b)(7)(C)-3, and (b)(7)(C)-4 were not
applied to McKiernan 50.

[6]
McKiernan 50 does not contain information pertinent to mail covers
placed on Dr. McKiernan.

the mail cover placed by the FBI on one Harry Short. Plaintiff
states that the redactions concerning Harry Short are of no
interest to her and do not pertain to her FOIA request. The last
name redacted on McKiernan 46 is an individual who provided
information to the FBI. This individual has nothing to do with any
planned mail cover on Dr. McKiernan and therefore the Court assumes
that this individual's name is not of interest to Plaintiff.

Although McKiernan 46 indicates that a mail cover is to be
placed on Dr. McKiernan, no mail cover had been placed on
Dr. McKiernan at the time that McKiernan 46 was created. Thus,
there is no redacted information on McKiernan 46 that is responsive
to Plaintiff's request for the "contents of the mail covers" placed
on her father.

Summary judgment accordingly is granted as to Defendants'
invocation of (b)(6)-1, (b)(6)-3, (b)(6)-4, (b)(7)(C)-1, (b)(7)(C)-
3, and (b)(7)(C)-4 on McKiernan 46.

### c.   McKiernan 64-66

Plaintiff has raised arguments in opposition to Defendants'
invocation of (b)(6)-4 and (b)(7)(C)-4 only with regard to the
clergy members that she states are mentioned on McKiernan 64-66.
See Pl. Resp. at 4, ¶ 1. With regard to McKiernan 64, Plaintiff
informed Defendants that she believed the name of the individual
redacted thereon was Monsignor John P. Monaghan. Plaintiff and
Defendants independently have confirmed that Monaghan died in the

1970s. Finding that its initial privacy concerns were no longer applicable, the FBI re-processed and released McKiernan 64 to Plaintiff. <u>See</u> Defendants' Corrected Memorandum in Response to Plaintiff's Motion for Summary Judgment ("Defs' Corrected Mem.") at 5 & Ex. 2.

There is another clergy member listed on McKiernan 64. According to statements by Dr. McKiernan recorded in McKiernan 64, this individual was the pastor of his church, Our Lady of Assumption in New York City, in the time frame of the late 1930s and early 1940s. This individual falls into the category of someone who was "merely mentioned" in the FBI document at issue. The Court cannot see what possible stigma could inure to this person if his identity were released. In addition, there is a high probability that this individual is already dead. Accordingly, the Court denies summary judgment as to exemption categories (b)(6)-4 and (b)(7)(C)-4 on McKiernan 64 and directs Defendants to release a fully unredacted copy of this document to Plaintiff.

With regard to McKiernan 65, there is one clergy member mentioned on that page–Monaghan. Defendants are directed to re-process McKiernan 65 by unredacting Monaghan's name. McKiernan 65 then shall be re-released to Plaintiff.

The other two names redacted on McKiernan 65 are that of an individual who ran a local draft board and processed Dr. McKiernan's Selective Service file and that of a personnel

manager at R.H. Macy's Company, where Dr. McKiernan worked for a time. Neither of these individuals are clergy members, and Plaintiff has not requested their names. Summary judgment as to Exemptions (b)(6)-4 and (b)(7)(C)-4 on McKiernan 65 is granted, in light of Plaintiff's failure to request the names of non-clergy members.

On McKiernan 66, there are no clergy members mentioned. The names redacted on McKiernan 66 are those of two of Dr. McKiernan's co-workers R.H. Macy's Company in 1921, and those of two confidential informants. As noted above, Plaintiff has waived any demand for identifying information as to confidential informants. The only remaining names on McKiernan 65 are non-clergy members–that is, the former co-workers. In light of Plaintiff's failure to request the names of non-clergy members, summary judgment as to Exemptions (b)(6)-4 and (b)(7)(C)-4 on McKiernan 65 is granted.

Plaintiff has not challenged Defendants' invocation of Exemptions (b)(6)-1 and (b)(7)(C)-1; (b)(6)-2 and (b)(7)(C)-2; (b)(6)-3 and (b)(7)(C)-3; (b)(6)-4 and (b)(7)(C)-4; (b)(6)-5 and (b)(7)(C)-5; and (b)(6)-6 and (b)(7)(C)-6 on any other pages apart from McKiernan 42 and McKiernan 64-66. It appears to this Court that Defendants applied these subexemptions appropriately on the remaining pages of the McKiernan documents where they were asserted, e.g., McKiernan 98-116. Summary judgment is therefore

granted as to the (b)(6) and (b)(7)(C) exemption categories except as otherwise stated in this Decision and Order, <u>supra</u>.

### 4.   Exemption 7(D): Confidential Source Information

Exemption 7(D) authorizes the government to withhold law enforcement investigatory records if production thereof

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. . . .

5 U.S.C. § 552(b)(7)(D). "The mere fact that a person or institution provides information to a law enforcement agency does not render that person a 'confidential source' within the meaning of exemption 7(D)." <u>Campbell v. U.S. Dep't of Justice</u>, 164 F.3d 20, 34 (D.C. Cir. 1998) (citing <u>U.S. Dep't of Justice v. Landano</u>, 508 U.S. 165, 178 (1993)). Rather, this exemption applies only when "the particular source spoke with an understanding that the communication would remain confidential." <u>Landano</u>, 508 U.S. at 178. "Such understandings are reasonable when the law enforcement agency receiving information provides either an express or implied assurance of confidentiality." <u>Campbell</u>, 164 F.3d at 34 (citation omitted).

Defendants here have redacted names and identifying data for individuals who provided information under an express assurance of

confidentiality, as well as the information they provided ((b)(7)(D)-1); confidential source file numbers ((b)(7)(D)-2); confidential source symbol numbers ((b)(7)(D)-3); and identifying data for foreign authorities and the names of their employing agencies as well as the information they provided ((b)(7)(D)-4).

### a.   Exemption category (b)(7)(D)-1

Defendants asserted exemption category (b)(7)(D)-1 (protecting names of, and information provided by, individuals operating under an express assurance of confidentiality) on McKiernan 49-51, 54-55, 79, 92, 97-116, 159, 161, 168, and 177-170. Plaintiff states that she has "waived any request for informants' names." Pl. Resp. at 5, ¶ 4. Summary judgment accordingly is granted as to Defendants' use of exemption category (b)(7)(D)-1 to redact the names of confidential informants on these pages.

In addition to the individual informants' names, (b)(7)(D)-1 covers the information that they supplied to the FBI. See Wilkinson v. Federal Bureau of Investigation, 633 F. Supp. 336, 347 (C.D. Cal. 1986) ("[Exemption 7(D)] does not entitle the government to make blanket redactions upon this basis. Only the [confidential] source's name and that information with a realistic likelihood of disclosing the source's identity may be redacted.").

Construing Plaintiff's pro se papers broadly, as it is required to do under the law, see Burgos v. Hopkins, 14 F .3d 787, 790 (2d Cir. 1994), the Court has interpreted them as arguing that

(b)(7)(D)-1 has been asserted in an over broad manner to redact information supplied by a confidential source on various pages. The Court considers the documents in turn below.

### 1.  McKiernan 49-51

Plaintiff specifically contests Defendants' redactions on McKiernan 50 which, she contends, contains information about the contents of mail covers placed on her father. Contrary to Plaintiff's contention, there is no information concerning mail covers on McKieran 50.

McKiernan 50 is an internal FBI memorandum from February 1942, summarizing information received from a foreign source. McKiernan 49 and 51 are closely related and must be considered in tandem with McKiernan 50.  McKiernan 51 appears to be the same information that is summarized in McKiernan 50. McKiernan 49 identifies the name of the strictly confidential foreign source who provided the information. Exemption category (b)(7)(D)-1 was properly applied on McKiernan 49-51 to redact the name of the person denominated as a "strictly confidential foreign source" on the face of the documents. See Campbell, 164 F.3d at 34 ("To withhold information under Exemption 7(D) by express assurances of confidentiality, the FBI must present 'probative evidence that the source did in fact receive an express grant of confidentiality.' Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar

with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources.") (internal quotation omitted; other citations omitted).

Exemption category (b)(7)(D)-1 has been asserted on all three documents to protect the information provided by the foreign source as well. In light of the age of these documents, and the fact that they have been unclassified by the FBI, the Court cannot discern in Defendants' moving papers a sufficient justification for redacting the *information* provided by the confidential foreign source. See Wilkinson, 633 F. Supp. at 348 ("The FBI's redactions also require additional justification when they involve events contained in 20-40 year-old documents. While there may have been a danger of identifying the informant when the events were recent, that danger clearly fades as the documents become decades old. . . ."). Defendants have failed to make "a specific showing of how the remaining information would identify the source[,]" id., and therefore the Court finds that Defendants have not fulfilled their burden of proof, see 5 U.S.C. § 552(a)(4)(B). Accordingly, summary judgment is denied as to Defendants' invocation of Exemption (b)(7)(D)-1 and (b)(7)(D)-4 to protect the substantive information provided by the strictly confidential foreign source named on McKiernan 50 and 51.

-27-

As noted above, Plaintiff has waived production of the names of the confidential sources. Therefore, summary judgment is granted as to Defendants' invocation of (b)(7)(D)-1 to protect the name of the strictly confidential foreign source where it appears on McKiernan 49 and 51.

Defendants are directed to re-process McKiernan 50 and 51 to remove the redactions with regard to the information provided by the strictly confidential foreign source, and re-release these documents to Plaintiff.

## 2. Other Pages On Which Defendants Assert Exemption Category (b)(7)(D)-1

Plaintiff has not specifically contested Defendants' assertions of exemption category (b)(7)(D)-1 (names, identifying data, and other information provided under an express assurance of confidentiality) on any of the other pages on which it was asserted by Defendants. Therefore, summary judgment is granted as to (b)(7)(D)-1 on McKiernan 54-55, 79, 92, 97-116, 159, 161, 168, 177-180.

### b. Exemption Categories (b)(7)(D)-2 and (b)(7)(D)-3

Plaintiff states that she is not interested in confidential source file numbers (protected under (b)(7)(D)-2) or confidential source symbol numbers (protected under (b)(7)(D)-3). It appears from the Court's review of the pertinent documents (McKiernan 179, (b)(7)(D)-2, confidential source file numbers; and McKiernan 53-56, 59, 66-67, 70, 74-77, 82, 87, 164, 179, (b)(7)(D)-3, confidential

source symbol numbers), that Defendants properly utilized these exemptions. Accordingly, summary judgment is granted as to Defendants' use of (b)(7)(D)-2) and (b)(7)(D)-3 to redact confidential source file numbers and confidential source symbol numbers on McKiernan 53-56, 59, 66-67, 70, 74-77, 82, 87, 164, and 179.

### c.   Exemption Category (b)(7)(D)-4

Defendants have asserted exemption category (b)(7)(D)-4, on McKiernan 49-51, 98-116, 159-162, 164, and 166 to "withhold the identity of and the information provided by foreign law enforcement authorities to the FBI under an 'express' assurance of confidentiality." Hardy Decl. at 44, ¶ 85. Defendants have also asserted (b)(7)(D)-4 to "protect investigative information provided to the FBI by foreign governments and foreign agencies with the expectation and understanding that this confidential information would not be disclosed outside of the FBI." Id. at 45, ¶ 86.

### 1.   McKiernan 49-51

The Court has discussed McKiernan 49-51 above in this Decision and Order in the context of Defendants' assertion of Exemption category (b)(7)(D)-1. There does not appear to information on McKiernan 49-51 that is not covered under the Court's discussion of the redactions made pursuant to exemption category (b)(7)(D)-1. Accordingly, the Court need not address the propriety of

Defendants' reliance upon exemption category (b)(7)(D)-4 to withhold information contained in McKiernan 49-51.

### 2.    McKiernan 98-116

These documents were withheld in their entirety. McKiernan 98 is a letter from a foreign law enforcement authority to the Legal Attache at the American Embassy enclosing a mailing list (McKiernan 99-116) of a political group. McKiernan 98 is marked "SECRET" and is stamped with a notation by the transmitting foreign law enforcement authority that the information therein "has been communicated in confidence to your agency. . . ." McKiernan 98. The Court concludes that this is sufficient to establish that the information was provided by the foreign law enforcment authority under an express grant of confidentiality. See Billington v. U.S. Dep't of Justice, 233 F.3d 581, 585 (D.C. Cir. 2000) ("The FBI's. . . declaration at least avers that evidence of express assurances exists, recorded either on the document containing the information or in some other place. Such a memorialization made contemporaneously with a report summarizing information received from a confidential source certainly suffices.") (citing Campbell, 164 F.3d at 34). Summary judgment therefore is granted as to Defendants' use of (b)(7)(D)-4 to fully withhold McKiernan 98-116.

### 3.    McKiernan 159-162

These documents were withheld in their entirety. The Court has already discussed McKiernan 159-162 above in this Decision and

Order in context of Defendants' assertion of Exemption (b)(1). There does not appear to information on McKiernan 159-162 that is not covered under the Court's discussion of the redactions made pursuant to Exemption (b)(1). Accordingly, the Court need not address the propriety of Defendants' reliance upon Exemption (b)(7)(D)-4 to withhold information contained in McKiernan 159-162.

**IV.   Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. #24) is granted in part and denied in part, and Plaintiff's Motion for Summary Judgment (Dkt. #25) is granted in part and denied in part. Defendants are directed to re-process and re-release documents to Plaintiff as specified in detail in the Decision and Order. This re-processing and re-release of documents shall be accomplished without delay and not later than thirty (30) days following entry of this Decision and Order. The Clerk of the Court is requested to close this case.

SO ORDERED.


S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          September 6, 2012


-31-

## APPENDIX 1: SUMMARY OF EXEMPTION CATEGORIES

| EXEMPTION CATEGORIES | INFORMATION WITHHELD | PAGES ON WHICH EXEMPTION APPLIED |
|---|---|---|
| **Category(b)(1)** | **Classified Material Covered Under Classification Guidelines** | |
| (b)(1)-1 | Information Properly Classified by an FBI Official Pursuant to Executive Order 13526 | 96, 97, 159, 160, 161, 162, 178 |
| **Category(b)(2)** | **Information Related Solely to the Internal Rules and Practices of an Agency** | |
| (b)(2)-1 | Confidential Source File Number. Cited in conjunction with (b)(7)(D)-2 | 179 |
| (b)(2)-2 | Confidential Source Symbol Number. Cited in conjunction with (b)(7)(D)-3 | 53, 54, 55, 56, 59, 66, 67, 70, 74, 75, 76, 77, 82, 97, 164, 178, 179 |
| **Categories (b)(6) and (b)(7)(C)** | **(b)(6):  Clearly Unwarranted Invasion of Personal Privacy (in medical/personnel records)**<br><br>**(b)(7)(C):  Unwarranted Invasion of Personal Privacy (in law enforcement records)** | |
| (b)(6)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel | 36, 39, 46, 53, 68, 73, 81, 83, 87, 95, 169-171, 175-180, 187 |
| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel. | 36, 39, 46, 53, 68, 73, 81, 83, 87, 95, 169-171, 175-180, 187 |
| (b)(6)-2 | Names and/or Identifying Information of Third Parties of Investigative Interest. | 8, 44, 61, 75, 77, 97, 99-116, 159-162, 164-167, 169-170, 176-177, 180 |
| (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties of Investigative Interest. | 8, 44, 61, 75, 77, 97, 99-116, 159-162, 164-167, 169-170, 176-177, 180 |

| (b)(6)-3 | Names and/or Identifying Information of Third Parties who Provided Information to FBI. May be cited in conjunction with (b)(7)(D)-1, and-4. | 8, 20, 39, 41-44, 46-49, 57-61, 63, 65-66, 74, 79, 82, 85, 92-93, 98, 161, 166, 169, 177-178 |
|---|---|---|
| (b)(7)(C)-3 | Names and/or Identifying Information of Third Parties who Provided Information to FBI. May be cited in conjunction with (b)(7)(D)-1, and-4. | 8, 20, 39, 41-44, 46-49, 57-61, 63, 65-66, 74, 79, 82, 85, 92-93, 98, 161, 166, 169, 177-178 |
| (b)(6)-4 | Names and/or Identifying Information of Third Parties Merely Mentioned. | 8, 40-46, 55, 59, 62, 64-66, 73-77, 97-116, 161-162, 167 |
| (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties Merely Mentioned. | 8, 40-46, 55, 59, 62, 64-66, 73-77, 97-116, 161-162, 167 |
| (b)(6)-5 | Names and/or Identifying Information Concerning State or Local Law Enforcement Personnel. | 169 |
| (b)(7)(C)-5 | Names and/or Identifying Information Concerning State or Local Law Enforcement Personnel. | 169 |
| (b)(6)-6 | Names and/or Identifying Information Concerning Non-FBI Federal Government Personnel. | 15, 117 |
| (b)(7)(C)-6 | Names and/or Identifying Information Concerning Non-FBI Federal Government Personnel. | 15, 117 |

| Category (b)(7)(D) | Confidential Source Information | |
|---|---|---|
| (b)(7)(D)-1 | Names, Identifying Data and/or Information Provided by Individual(s) Under an "Express" Assurance of Confidentiality. May be cited in conjunction with (b)(6)-3 and (b)(7)(C)-3. | 49-51, 54-55, 79, 92, 97-116, 159, 161, 169, 177-179 |
| (b)(7)(D)-2 | Confidential Source File Number. Cited in conjunction with (b)(2)-1. | 179 |
| (b)(7)(D)-3 | Confidential Source Symbol Number. May be cited in conjunction with (b)(2)-2. | 53-56, 59, 66-67, 70, 74-77, 92, 97, 164, 179 |
| (b)(7)(D)-4 | Identifying Data for, and Information Provided by Foreign Authorities and the Names of Their Employing Agencies. May be cited in conjunction with (b)(6)-3 and (b)(7)(C)-3. | 49-51, 98-116, 159-162, 164, 166 |